UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
JANE JOHNSON AND DIANA JOHNSON          16 CV 1362 (NGG)(PK)

                         Plaintiffs,          **AMENDED COMPLAINT**

      -against-          **JURY DEMAND**

CITY OF NEW YORK AND
DETECTIVE ANSARI KALIL

                         Defendants.
-------------------------------------------------------x

        Plaintiffs, by their attorneys, Law Office of Philip Akakwam, P.C., complaining of the defendants City of New York and Detective Ansari Kalil, (collectively "defendants"), upon information and belief alleges as follows:

## INTRODUCTION

        1. This is an action at law to redress the deprivation under color of statute, ordinance, regulation, custom, or usage of rights, privileges, and immunities secured to the plaintiffs by the Fourth, Fifth, Eight, and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C. § 1983 [and § 1985], [and arising under the laws and statutes of the City and State of New York].

        2. Plaintiffs seek monetary damages for: the false arrest, false imprisonment, and malicious prosecution of Plaintiffs and otherwise, for the violation of their federally guaranteed constitutional and civil rights. Plaintiffs seek whatever other relief is appropriate and necessary in order to serve the interest of justice and assure that their remedy is full and complete.

**JURISDICTION**

3. The jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. Sections 1331 and 1343[3] and [4] in conjunction with the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and under the Fourth and Fourteenth Amendments to the United States Constitution.

4. Jurisdiction is also invoked pursuant to and under 28 U.S.C. Section 1367, entitled Supplemental Pendent Party Jurisdiction. Plaintiffs request that the Court invoke pendent jurisdiction over any and all claims arising under the laws and Constitution of the State of New York.

5. Venue is proper in this district under 28 U.S.C. § 1391(b).

**PARTIES**

6. Plaintiff Jane Johnson is a black female, 70 years old, and a resident of Brooklyn, Kings County, New York.

7. Plaintiff Diana Johnson is a black female and resident of Brooklyn, Kings County, New York. Diana is the daughter of plaintiff Jane Johnson.

8. Defendant, City of New York (City) is a municipal entity existing under the laws and Constitution of the State of New York and was the public employer of the defendant police officers through its Police Department and the actions of the police officers complained of herein were done as part of the custom, practice, usage, regulation and/or direction of the City of New York.

9. Upon information and belief and at all times relevant herein, defendant Detective Ansari Kalil was and still is a police officer employed by defendant City of New York.

10. Plaintiffs are suing the defendant officer in his individual and official capacities.

## FACTS COMMON TO ALL CAUSES OF ACTION

11. On or about February 14, 2015, plaintiffs were arrested and detained in a cell by defendants without probable cause or justification.

12. Plaintiff Jane Johnson was arrested by defendants at the 71st precinct where she had gone to make complaints about harassment by her *de facto* landlord Angela Newton.

13. Upon arrest of Jane Johnson, defendants asked about her daughter, plaintiff Diana Johnson. Then defendants called Diana and asked her where she was. When Diana told them that she was buying food at a Chinese Restaurant, defendants went to the restaurant and arrested her.

14. Jane and Diana Johnson are tenants in a premises located at 1711 President Street, #3, Brooklyn, NY 11213. Their room was rented to them by Angela Newton who misrepresented herself to them as the owner of the premises and collected rent from plaintiffs.

15. For many months prior to the arrest of plaintiffs, said Angela Newton had subjected plaintiffs to various acts of harassment, some of which were known to the defendants.

16. On or about November 27, 2014, plaintiffs had called the City's 311 Information Number to complain about problems in the premises they were renting. The following day, Ms. Newton commenced eviction proceedings against plaintiffs.

17. On or about December 4, 2014, Newton got into plaintiff Diana Johnson's room and started taking photographs of her. After taking photographs of Diana, Ms. Newton called the police from Diana's room and falsely claimed that Diana had assaulted her.

18. Plaintiff Diana also called the police and advised them that Newton was in her room taking photographs of her without her consent and had refused to leave her room. She also advised them that she did not assault Newton.

19. Police arrived plaintiffs' residence and removed Newton from plaintiffs' room. The police saw that she had not been assaulted as she had claimed. Newton told the police officers that she wanted plaintiffs to vacate the premises they were renting. The officers told her that she had to go to court in order to evict them.

20. Plaintiff Diana explained to the officers how Newton barged into her room and took photographs of her without her consent. She also told them how she has been harassing and threatening her and her mother Jane Johnson because she had called 311 to complain about problems in the premises.

21. On or about December 7, 2014, while plaintiffs were in their residence with one Jensen Cummings, Ms. Newton called the police and falsely alleged that Jensen had assaulted her. When the police responded later and knocked at Newton's door, she failed to open her door.

22. Newton continued her harassment of plaintiffs by placing a huge old piano in front of plaintiffs' entrance door thereby obstructing their movement into and out of their room. Plaintiffs called 311 to complain and the Fire Department (FDNY) responded and directed Newton to remove the piano from plaintiff's door because it constituted fire hazard. Prior to this incident, Newton had also placed a dresser and bed bug-infested mattress outside plaintiff's bedroom door.

23. On or about December 17, 2014, the eviction proceedings brought by Newton against plaintiffs was dismissed by the Housing Court for lack of standing to commence the action.

24. Following the dismissal of her eviction action, Newton went back to the police to embellish her December 7, 2014 complaint. Now she allegedly claimed that plaintiffs had beaten her up, stole her phone and that one Jensen Cummings had stolen her tools.

25. Also, following her loss of the eviction action, Newton resorted to various acts of

intimidation, harassment and self-help to evict the plaintiffs. Newton changed the door locks to plaintiffs' bedrooms and put garbage at plaintiffs' bedroom door.

26. Furthermore, Newton allegedly offered money to one Joseph Colon to physically harm plaintiffs but said Mr. Colon refused.

27. On or about February 14, 2015, plaintiff Jane Johnson went to the precinct to complain about the threats and harassment she and her daughter Diana Johnson were being subjected to by Newton.

28. But at the precinct, plaintiff Jane was arrested and also questioned about her daughter Diana. Jane explained to the detective about the ongoing tenancy issues they were having with Newton, the various acts of harassment Newton had committed against her and Diana. She further explained to the detective how Newton had repeatedly made false allegations of assault against her, Diana, Jensen and several other tenants in the building.

29. The detective called Diana to ascertain her whereabouts and told her that they were coming to arrest her. Thereafter, police officers arrested Diana at a Chinese restaurant where she was buying food.

30. Jensen Cummings who had gone to the precinct with Jane was also arrested.

31. When plaintiffs protested their arrest to Detective Kalil, he told them that Newton's original complaint on December 7, 2014 was not enough to arrest them but because Newton kept coming to the precinct and on one occasion cried at the precinct, they felt that they had to do something so that she would stop coming to border them.

32. Detective Kalil further told plaintiffs that he felt that he had to arrest plaintiffs after Newton took her complaint to his boss at the precinct.

33. At the precinct, plaintiff Jane who suffers from glaucoma and needed eye drops at regular intervals, had her eye drop taken away from her. She advised the officers that she needed to apply the eye drops at least three times per day, otherwise she would suffer severe pain. The defendants denied her the eye drops.

34. While still detained at the precinct, Jane Johnson started having severe pain in her eyes and she advised the officers of the pain and that she needed her eye drops but her request was ignored.

35. After being detained for many hours at the precinct, plaintiffs were taken to the Central Booking where they were further detained before being arraigned.

36. At Central Booking Jane Johnson continued to feel severe pain in her eyes because she had not taken her eye drops since she was arrested. She requested for her eye drops but her request was denied. As a result, her eye pressure shot up very high and has remained high long after her release from detention.

37. Plaintiffs were charged with assault and attempted larceny among other charges. Upon arraignment, they were released on their own recognizance.

38. Plaintiffs who were arrested on a Friday evening were detained until Sunday when they were released following their arraignment. They had to return to court several times to defend the charges.

39. On May 21, 2015, all the criminal charges against plaintiffs were dismissed on the motion of the District Attorney.

40. On many occasions prior to their arrest, plaintiffs made complaints to the police about being harassed by Angela Newton but each time their complaints were either dismissed outright

or ignored. And Ms. Newton often boasted to plaintiffs that she had "friends" at the precinct and that their complaints would continue to be ignored.

41. Defendants knew or ought to have known with reasonable inquiry that complainant Newton was making false allegations against plaintiffs to get them to vacate the premises after she had failed to obtain their eviction in the Housing Court. Defendants allowed Newton to use the criminal process to settle tenancy disputes.

42. Defendants knew about Newton's history of false allegations against plaintiffs and other tenants in the building. Defendants were aware that she had made several false allegations of the same kind against other tenants she had tried to evict from the building.

43. Defendants arrested plaintiffs to stop Newton from bordering them with her false complaints at the precinct even though they knew that her complaints were not credible.

44. Defendants allowed Newton to continue to change her story until the fabricated story was "facially enough" to support an arrest.

45. That each and every officer involved in plaintiffs' arrest knew and/or ought to have known that plaintiffs did not commit any crime, and each officer had a realistic opportunity to intervene to prevent the harm detailed above from occurring. Nonetheless, defendant officers did absolutely nothing to discourage and prevent the harm detailed above from occurring and failed to intervene.

46. Plaintiffs suffered physical injuries, including bruises on their wrists from the tightness of the handcuffs and plaintiff Jane Johnson suffered severe pain to her eyes from defendants' refusal to allow her use her eye drops. Moreover, plaintiffs suffered and continue to suffer emotional distress, fear, embarrassment, humiliation, shock, loss of liberty, psychological

trauma, pain, financial loss and damage to reputation as a consequence of the defendants' unlawful conduct alleged herein.

47. Plaintiffs suffered violations of their federally guaranteed constitutional and civil rights including rights guaranteed to them under the Fourth, Eight and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

48. Defendant Officers acted together and in concert sanctioning and ratifying and otherwise condoning the wrongful actions being taken by each of the defendant Officers in a collective manner and fashion.

49. Plaintiffs have no other adequate remedy at law but for this action.

### AND AS FOR A FIRST CAUSE OF ACTION:
### 42 U.S.C. § 1983 - FALSE ARREST AND IMPRISONMENT

50. Plaintiffs reiterate paragraphs 1 through 49 and incorporate such by reference herein.

51. By their conduct and under color of law, defendant officers deprived plaintiffs of their constitutional right to be free from false arrest and false imprisonment.

52. Consequently, plaintiffs have been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

### AND AS FOR A SECOND CAUSE OF ACTION:
### MALICIOUS PROSECUTION

53. Plaintiffs reiterate paragraphs 1 through 52 and incorporate such by reference herein.

54. Plaintiffs were subjected to malicious prosecution and malicious abuse of the criminal process without any just grounds therefor, in violation of their right under the Fifth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42

U.S.C. Section 1983.

55. Plaintiffs were wholly innocent of said charges and were forced by defendants to submit to Court proceedings.

56. Defendants commenced the criminal proceeding against plaintiffs because of a wrong and improper motive other than a desire to see the ends of justice served.

57. The aforesaid criminal proceedings were commenced by reason of defendants' intentional wanton, reckless and/or grossly negligent conduct.

58. As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiffs sustained the damage herein before stated.

## AND AS FOR A THIRD CAUSE OF ACTION:
## 42 U.S.C. § 1983 - DELIBERATE INDIFFERENCE

59. Plaintiffs reiterate paragraphs 1 through 58 and incorporate such by reference herein.

60. Defendants deliberately denied medical attention to plaintiff Jane Johnson for the sole purpose of causing said plaintiff to suffer further pain in violation of her rights under the Eight Amendment of the United States Constitution.

61. The conduct of the defendants in depriving plaintiff adequate medical attention for the severe pain to her eyes caused by defendants' denial of access to her eye drops constitutes deliberate indifference to the well-being and safety of plaintiff Jane Johnson in violation of her s right under the Eight Amendment of the United States Constitution.

62. As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff Jane Johnson sustained the damages hereinbefore alleged.

## AND AS FOR A FOURTH CAUSE OF ACTION

**(Monell/42 U.S.C. Section 1983: Claim Against Defendant City of New York)**

63. Plaintiffs reiterate paragraphs 1 through 62 and incorporate such by reference herein.

64. The actions taken against plaintiffs by the defendant Officers herein were propelled by a policy and practice of the City of New York which favors initial complainants over later complainants without giving primary regard to the particular facts involved in the case, and which assumes that the original complainant was the victim. This policy causes persons who are named as wrongdoers in the first-filed complaints to be charged, arrested, detained and prosecuted without proper police investigation of evidence potentially favorable to the later complainants.

65. The actions taken against plaintiffs by the defendant Officers herein were further propelled by a policy and practice of the City of New York which deprives arrestees of their right to have their cross-complaints entertained and investigated on the same basis as the original complaints.

66. Also, the foregoing violations of plaintiffs' federal constitutional rights and resultant injuries were directly and proximately caused by conduct, chargeable to defendant City, amounting to deliberate indifference to the constitutional rights of persons, including plaintiffs, who are investigated, arrested, or prosecuted for alleged criminal activities.

67. The defendant City, through its police department, the NYPD, has developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of its citizens, which caused the violations of plaintiffs' rights.

68. It was the policy and/or custom of the City to undertake inadequate and improper

investigations of civilian complaints of police misconduct and to punish inadequately officers involved in complaints which were substantiated.

69. The aforesaid deliberate or *de facto* policies, procedures, regulations, practices and/or customs were implemented or tolerated by policymaking officials for defendant City including but not limited to, the New York City Police Commissioner, who knew or should have known that such policies, procedures, regulations, practices and/or customs concern issues that regularly arise in the investigation and prosecution of criminal cases.

70. Defendant City failed to provide proper training and/or failed to insure that the training provided was adequately understood in regard to the following tasks which police officers commonly perform:

    (a)    The determination of probable cause to make an arrest;

    (b)    The duty to take into account the totality of the circumstances in determining the existence of probable cause to make an arrest;

    (c)    The duty to properly review any exculpatory evidence that may exonerate an accused person.

71. Defendant City, acting through the NYPD, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise or discipline its police officers concerning correct practices in conducting investigations, interviewing of witnesses and informants, assessment of the credibility of witnesses and informants, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and obligation to effect an arrest only when there is probable cause for such arrest.

72. The policymaking officials at NYPD know or ought to have known that such issues

that regularly arise in the investigation and prosecution of criminal cases either present police employees with difficult choices of the sort that instruction, training and/or supervision will make less difficult or that the need for further instruction, training, supervision and/or discipline was demonstrated by a history of police employees mishandling such situations and making the wrong choices.

73. The aforementioned policymaking officials knew that the wrong choice by police officers concerning determination of probable cause will frequently cause the deprivation of the constitutional rights of criminal suspects or defendants and cause them constitutional injury.

74. As a result of inadequate training of police officers on the practical meaning of probable cause for arrest, officers frequently detain and/or arrest citizens based on their hunches, inklings, or mere suspicion and without reasonable or probable cause.

75. As a direct and proximate result of the City's policies and deliberate indifference, defendants violated plaintiffs' constitutional rights causing plaintiffs to suffer damages.

## AND AS FOR A FIFTH CAUSE OF ACTION: PENDENT CLAIM OF ASSAULT AND BATTERY

76. Plaintiffs reiterate paragraphs 1 through 75 and incorporate such by reference herein.

77. By their conduct, as set forth above, defendant officers committed acts of unlawful assault and battery against plaintiffs.

78. The defendant City is responsible for the assault and battery of plaintiffs by the defendant officers as set forth above because the misconduct occurred while they were acting in the scope of their employment, specifically in the course of arresting plaintiffs.

79. By reason of and as a consequence of the assault detailed above, plaintiffs suffered

the injuries herein described.

## AND AS FOR A SIXTH CAUSE OF ACTION:
## PENDENT CLAIMS OF FALSE ARREST AND FALSE IMPRISONMENT

80. Plaintiffs reiterate paragraphs 1 through 79 and incorporate such by reference herein.

81. Plaintiffs were wrongfully, unlawfully and unjustifiably charged, arrested, detained and deprived of their liberty against their will, and were imprisoned by defendants and other unknown John Doe police officers.

82. At all relevant times, the defendant officers acted forcibly in apprehending plaintiffs.

83. The wrongful, unjustifiable, and unlawful arrest, detention and imprisonment of plaintiffs were carried out without a warrant.

84. The false arrest and imprisonment of plaintiffs was without any justification or probable cause, and was forcible and against his will.

85. All the foregoing occurred without any fault or provocation on the part of plaintiffs.

86. At all relevant times, the defendant officers and other John Doe police officers who were responsible for the false arrest and imprisonment of plaintiffs were employees of the defendant City through the NYPD, and were acting for, upon and in furtherance of the business of their employer and within the scope of their employment.

87. As a direct and proximate result of the false arrest and imprisonment of plaintiffs as detailed above, plaintiffs sustained the damage herein before stated.

## AND AS FOR A SEVENTH CAUSE OF ACTION
## PENDENT CLAIM OF GROSS NEGLIGENCE

88. Plaintiffs reiterate paragraphs 1 through 87 and incorporate such by reference herein.

89. The conduct of the defendant officers in falsely arresting and detaining plaintiffs was

grossly negligent and intended to cause plaintiffs to suffer injury and extreme mental and emotional distress.

90. At all relevant times, said defendant officers were employees of the defendant City through the NYPD, and were acting for, upon and in furtherance of the business of their employer and within the scope of their employment.

91. As a direct and proximate result of the false arrest and imprisonment of plaintiffs as detailed above, plaintiffs sustained the damage herein before stated.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants as follows:

i. For compensatory damages in an amount to be determined at trial - against all defendants, jointly and severally;

ii. For punitive damages against the individual defendants in an amount to be determined at trial;

iii. For reasonable attorneys' fees, together with costs and disbursements of this action, pursuant to 42 U.S.C. § 1988 and to the inherent powers of this Court;

iv. For pre-judgment interest as allowed by law; and

v. For such other and further relief as the court deems just and proper.

Dated: Brooklyn, New York
August 26, 2016

                                                LAW OFFICE OF PHILIP AKAKWAM, P.C.

                                        By:      /s/
                                                Philip Akakwam, Esq.
                                                Attorneys for the Plaintiffs
                                                303 Livingston Street, 2nd Floor
                                                Brooklyn, N.Y. 11217
                                                (718) 858-2488

Index No. 16 CV 1362 (NGG)(PK)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JANE JOHNSON AND DIANA JOHNSON

       Plaintiffs,

 -against-

CITY OF NEW YORK AND
DETECTIVE ANSARI KALIL

       Defendants.

---

## AMENDED COMPLAINT

---

LAW OFFICES OF PHILIP AKAKWAM, P.C.
Attorneys for Plaintiffs
Office and Post Office Address
303 Livingston Street, 2nd Floor
Brooklyn, N.Y. 11217
(718) 858-2488

TO:

---

Service of a copy of the within is hereby admitted.

Dated:

_____